**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MICHAEL FELLOWS and JONATHAN HADDEN, on behalf of themselves and others similarly situated,<br><br>               Plaintiffs,<br><br>   v.<br><br>MADONNA LOUISE CICCONE; LIVE NATION WORLDWIDE, INC.; LIVE NATION MTOURS (USA), INC.; and BROOKLYN EVENTS CENTER, LLC, D/B/A BARCLAYS CENTER,<br><br>               Defendants. | Case No. 1:24-cv-00357-HG<br><br><br>**ORAL ARGUMENT REQUESTED** |

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**</u>

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................................1

FACTUAL BACKGROUND ...........................................................................................................4

ARGUMENT ....................................................................................................................................5

I.  THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(1) BECAUSE
    PLAINTIFFS LACK STANDING TO SUE ......................................................................5

    A.  Legal Standard for Motion to Dismiss for Lack of Article III Standing ...............5

    B.  Plaintiffs Do Not Plausibly Allege a Cognizable Injury (Facial Challenge to
        Standing) ...............................................................................................................6

    C.  Plaintiffs Cannot Plausibly Allege a Cognizable Injury (Factual Challenge to
        Standing) ...............................................................................................................7

II. THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6) .........9

    A.  Legal Standard for Motion to Dismiss for Failure to State a Claim ......................9

    B.  All of Plaintiffs' Claims Fail Because They Do Not and Cannot Plausibly
        Allege that Defendants Misrepresented When Madonna Would Take or
        Leave the Stage .....................................................................................................9

    C.  All of Plaintiffs' Claims Fail Because They Do Not and Cannot Plausibly
        Allege Injury .......................................................................................................14

    D.  Plaintiffs' Claims Also Fail for Other Independent Reasons................................14

        1.  *The Complaint is An Improper Shotgun Pleading* ....................................14

        2.  *Plaintiffs' Fraud-Based Claims (Counts 1, 2, 4, 5) Also Fail Because
            Plaintiffs Do Not Allege Any Representations That They Saw and
            Relied On Prior to Purchasing Their Tickets* ............................................15

        3.  *Plaintiffs' Breach of Contract Claim (Count 3) Fails Because They Do
            Not Allege They Bought Their Tickets From Any Defendants* ...................17

        4.  *Plaintiffs' Negligent Misrepresentation Claim (Count 5) Also Fails
            Because Plaintiffs Do Not Allege Anything More Than a Common
            Arms-Length Commercial Transaction* ......................................................17

        5.  *Plaintiffs' Unjust Enrichment Claim (Count 6) Also Fails for Other
            Reasons* ......................................................................................................18

III. ALTERNATIVELY, THE COURT SHOULD STRIKE THE COMPLAINT'S
     CLASS ALLEGATIONS ................................................................................................19

    a.  Legal Standard for Motion to Strike Class Allegations.......................................19

    b.  The Complaint's Class Allegations Should be Stricken Because the
        Proposed Class Could Never be Certified ...........................................................20

CONCLUSION...............................................................................................................................22

# TABLE OF AUTHORITIES

Page(s)

CASES

*Anschutz Corp. v. Merrill Lynch & Co.*,
690 F.3d 98 (2d Cir. 2012)................................................................................16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................9

*Atuahene v. City of Hartford*,
10 F. App'x 33 (2d Cir. 2001) ..........................................................................15

*Axon v. Fla.*,
813 F. App'x 701 (2d Cir. 2020) ......................................................................13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................9

*Borgese v. Baby Brezza Enters. LLC*,
2021 WL 634722 (S.D.N.Y. Feb. 18, 2021)....................................................20

*Brady v. Basic Rsch., L.L.C.*,
101 F. Supp. 3d 217 (E.D.N.Y. 2015) ............................................................6, 7

*Camacho v. City of New York*,
2020 WL 4014902 (S.D.N.Y. July 16, 2020) ..................................................20

*Cantinieri v. Verisk Analytics, Inc.*,
2023 WL 2734682 (E.D.N.Y Mar. 31, 2023) ....................................................8

*Chen v. Dunkin' Brands, Inc.*,
954 F.3d 492 (2d Cir. 2020)..............................................................................10

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)............................................................................................19

*Daniel v. Mondelez Int'l, Inc.*,
287 F. Supp. 3d 177 (E.D.N.Y. 2018) ..............................................................10

*Davis v. Navient Corp.*,
2018 WL 1603871 (W.D.N.Y. Mar. 12, 2018)............................................19, 20

*Fink v. Time Warner Cable*,
714 F.3d 739 (2d Cir. 2013)...................................................................10, 12, 13

- ii -

*Force v. Facebook, Inc.*,
934 F.3d 53 (2d Cir. 2019) ................................................................................................11

*Ford v. Reynolds*,
326 F. Supp. 2d 392 (E.D.N.Y. 2004), *aff'd*, 167 F. App'x 248 (2d Cir. 2006) .................8, 12

*Friedman v. Cavalry Portfolio Servs., LLC*,
2023 WL 3708996 (E.D.N.Y. May 30, 2023) ......................................................................6, 8

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) .............................................................................................................20

*Herrick v. Grindr, LLC*,
306 F. Supp. 3d 579 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x 586 (2d Cir. 2019) .........13, 16, 17

*In re KIND LLC "Healthy & All Nat." Litig.*,
209 F. Supp. 3d 689 (S.D.N.Y. 2016) ...................................................................................17

*Izquierdo v. Mondelez Int'l, Inc.*,
2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ........................................................................18

*Kraus v. Snow Teeth Whitening LLC*,
2022 WL 4642170 (E.D.N.Y. Sept. 15, 2022), *report and recommendation
adopted*, 2022 WL 4662819 (E.D.N.Y. Sept. 30, 2022) .................................................5, 6, 7

*Leboeuf v. Edgewell Pers. Care Co.*,
2023 WL 5432265 (N.D.N.Y. Aug. 23, 2023) .......................................................................10

*Lin v. Canada Goose US, Inc.*,
640 F. Supp. 3d 349 (S.D.N.Y. 2022) .............................................................13, 15, 16, 18

*Lugones v. Pete & Gerry's Organic, LLC*,
440 F. Supp. 3d 226 (S.D.N.Y. 2020) ...................................................................................15

*Mazzola v. Roomster Corp.*,
849 F. Supp. 2d 395 (S.D.N.Y. 2012) ...................................................................................12

*Morrison v. Nat'l Austl. Bank Ltd.*,
547 F.3d 167 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010) ........................................................6

*Ortho-Clinical Diagnostics Berm. Co. v. FCM, LLC*,
739 F. App'x 664 (2d Cir. 2018) ...........................................................................................13

*Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*,
85 N.Y.2d 20 (1995) .............................................................................................................10

*Panos, et al. v. Live Nation Worldwide, Inc. et al.*,
No. 1:20-cv-01437-RPK-SMG, ECF No. 18 (E.D.N.Y. June 1, 2020) ....................................4

*Romualdo v. Guru Krupa 104 Corp.*,
    2023 WL 6167614 (E.D.N.Y. Sept. 1, 2023) ........................................................14

*Seeger v. Ross & Assocs.*,
    2019 WL 5695944 (E.D.N.Y. Aug. 6, 2019) ..........................................................9

*Skylar v Energizer Brands LLC*,
    2022 WL 4539573 (E.D.N.Y. Sept. 28, 2022) ......................................................19

*Thorne v. Square, Inc.*,
    2022 U.S. Dist. LEXIS 31810 (E.D.N.Y. Feb. 23, 2022).......................................11

*Tyman v. Pfizer, Inc.*,
    2017 WL 6988936 (S.D.N.Y. Dec. 27, 2017), *report and recommendation*
    *adopted*, 2018 WL 481890 (S.D.N.Y. Jan. 18, 2018)......................................16, 18

*Warren v. Whole Foods Mkt. Grp., Inc.*,
    574 F. Supp. 3d 102 (E.D.N.Y. 2021) .............................................................18, 19

*Whalen v. Michael Stores Inc.*,
    153 F. Supp. 3d 577 (E.D.N.Y. 2015), *aff'd*, 689 F. App'x 89 (2d Cir. 2017).....................5, 7

**STATUTES & RULES**

GBL § 349................................................................................................... *passim*

GBL § 350................................................................................................... *passim*

Fed. R. Civ. P. 8 .....................................................................................14, 15

Fed. R. Civ. P. 12 .......................................................................5, 8, 9, 19, 20

Fed. R. Civ. P. 23 .............................................................................3, 19, 20

## PRELIMINARY STATEMENT

The two named plaintiffs in this putative class action allege they were "misled" by the "8:30 p.m." event time printed on their tickets for a December 13, 2023 Madonna concert at the Barclays Center in Brooklyn. They claim they were under the impression the show would conclude by 10:30 p.m., yet Madonna did not take the stage until after 10:30 p.m. and the show did not finish until around 1 a.m. Plaintiffs claim that concertgoers may have been inconvenienced or injured because they stayed up later than planned or had fewer transportation options to get home.

Plaintiffs do not allege Madonna's performance was subpar, that her performance was worth less than what they paid, or that they left the concert before watching her entire performance. Nor did they seek a refund. Instead, they filed a federal lawsuit alleging false advertising, breach of contract, and related causes of action. But the Complaint fails to state any claim for relief. It does not attach or describe any representations by Defendants that Plaintiffs saw or relied on before deciding to buy tickets to the concert, never mind any statements promising when Madonna would take the stage or end her show. That is because Defendants never made any such representations.

The event was scheduled for 8:30 p.m. and that time was printed on the event tickets. But nowhere did Defendants advertise that Madonna would take the stage at 8.30 p.m., and no reasonable concertgoer—and certainly no Madonna fan—would expect the headline act at a major arena concert to take the stage at the ticketed event time. Rather, a reasonable concertgoer would understand that the venue's doors will open at or before the ticketed time, one or more opening acts may perform while attendees arrive and make their way to their seats and before the headline act takes the stage, and the headline act will take the stage later in the evening.

That is precisely what happened at the concert Plaintiffs attended. Fans got just what they paid for: a full-length, high-quality show by the Queen of Pop. Indeed, Plaintiff Hadden posted on

Facebook the next day that he has "never missed a Madonna Tour" and the "tour opener last night" was "[i]ncredible, as always!" In other words, the concert met or exceeded his expectations.



The Complaint itself concedes that Madonna fans, like Mr. Hadden, would not expect Madonna to appear onstage at the printed 8:30 p.m. event time, alleging that she has a "years-long history" of "arriving several hours late to prior concerts," such that "Plaintiffs knew or should have known that the Concerts would not start at 8:30 p.m." Compl. ¶ 70.

The Complaint nonetheless rests on the fallacy that concertgoers *reasonably* expected Madonna's show to end by 10:30 p.m. simply because "8:30 p.m." was printed on the event tickets. But that is not a reasonable interpretation of the ticketed event time. Reasonable concertgoers also know that concert lengths vary based on numerous factors, such as the duration of the opening act and the artist's set list for the night. So, they would not reasonably expect the night to end by 10:30 p.m. unless an advertisement or ticket says as much—and none did here. Plaintiffs cannot plausibly

allege that concertgoers were deceived or deprived the benefit of the bargain. All of their causes of action therefore fail as a matter of law.

Plaintiffs also do not plausibly allege they suffered any injury, a threshold requirement for Article III standing and an element of each cause of action they assert. Plaintiffs speculate that ticketholders who left the venue after 1 a.m. might have had trouble getting a ride home or might have needed to wake up early the next day for work. That is not a cognizable injury. But even if it were, Plaintiffs do not allege that *they* suffered it. Indeed, Plaintiffs do not plead *any* injury that they themselves suffered by spending the night at an "incredible" concert. Plaintiffs therefore lack Article III standing. And for these and other reasons discussed below, Plaintiffs also do not and cannot state any claim for relief. The Complaint should be dismissed in its entirety with prejudice.

Should any part of the Complaint survive, the Court should strike its class allegations. The Complaint alleges that the putative class includes concertgoers who bought tickets either from (i) Ticketmaster (which is affiliated with Live Nation), (ii) resellers, or (iii) the Barclays Center box office. The vast majority of putative class members—those who bought from Ticketmaster or its reseller partners—agreed to terms of use that require informal dispute resolution and then arbitration, and that prohibit class litigation, so the proposed class could never be certified. Nor could Plaintiffs meet Rule 23's typicality requirement to serve as the class representatives. Plaintiffs either agreed to the Ticketmaster terms of use and thus cannot litigate their purported claims, or they did not agree to those terms and therefore are atypical of the bulk of the proposed class who did. Either way, the Complaint's proposed class could never be certified, so if the Court does not dismiss the Complaint in full it should strike the class allegations.

## FACTUAL BACKGROUND

Madonna is "one [of] the premier performers of the past 40 years" and has been performing concert tours for decades. Compl. ¶ 1. Plaintiffs allege they bought tickets to Madonna's December 13, 2023 concert at the Barclays Center that was part of her "Celebration Tour." *Id.* ¶¶ 10-11.

According to Plaintiffs, "Madonna has a long history of arriving and starting her concerts late, sometimes several hours late." *Id.* ¶ 16. *See also id.* ¶ 70. Plaintiffs allege that she did so throughout her 2016 Rebel Tour, throughout her 2019-2020 Madame X Tour, during other prior tours, and during Celebration Tour concerts preceding the December 13 concert they attended. *Id.* Plaintiffs concede that Madonna's "long history" of "late" starts is so well known that "Plaintiffs knew or should have known that the Concerts would not start at 8:30 p.m., and that Madonna would not take the stage until several hours after the start time." *Id.* ¶ 70.[1]

The Complaint does not allege that either Plaintiff was disappointed by Madonna's performance or left before the end. On the contrary, Mr. Hadden posted on Facebook the day after the concert that he has "never missed a Madonna Tour" and the "tour opener last night" was "[i]ncredible, as always!" *See* Warshafsky Declaration, Ex. 1.

Nevertheless, on January 17, 2024, Plaintiffs sued Madonna, the Barclays Center (the concert venue), and two Live Nation entities (the alleged concert promoter). Plaintiffs allege that concertgoers were deceived by the printed event time of 8:30 p.m. on the face of the December 13

---

[1]     Although it is peculiar that Plaintiffs would make such a damaging admission in their Complaint, their counsel filed a materially similar lawsuit related to Madonna's 2019-2020 Madame X concert tour, in which the plaintiffs made the same concession. *See* Amended Complaint in *Panos, et al. v. Live Nation Worldwide, Inc. et al.*, No. 1:20-cv-01437-RPK-SMG, ECF No. 18 (E.D.N.Y. June 1, 2020), ¶ 86 (alleging that "[b]ased on the history of Madonna arriving late to prior concerts, Plaintiffs knew or should have known that said concerts would not start at 8:30 p.m. . . . ."). And, of course, it is the truth, as Mr. Hadden admitted in a television interview. *See* Warshafsky Declaration, Ex. 2.

concert tickets because Madonna did not take the stage at 8:30 p.m. *Id.* ¶ 13. Plaintiffs claim that concertgoers were under the impression that Madonna's show would run for two hours and conclude by 10:30 p.m., although the Complaint does not identify any such statements by Defendants. *Id.* ¶ 39. Plaintiffs assert six causes of action premised on these allegations—false advertising pursuant to New York General Business Law ("GBL") sections 349 & 350, breach of contract, promissory estoppel, negligent misrepresentation, and unjust enrichment.

Plaintiffs seek to represent a class of individuals who bought tickets for any one of three December 2023 Madonna concerts at the Barclays Center from Ticketmaster, ticket resellers, or the box office at the concert venue. Compl. ¶ 20. Plaintiffs allege their claims are "typical" of the putative class members' claims (*id.* ¶¶ 20, 25), yet Plaintiffs do not allege where they bought their concert tickets or that they attended any concert other than on December 13.

## ARGUMENT

### I. THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(1) BECAUSE PLAINTIFFS LACK STANDING TO SUE

#### A. Legal Standard for Motion to Dismiss for Lack of Article III Standing

Article III standing is a threshold inquiry. To survive a motion to dismiss under Rule 12(b)(1), a plaintiff must establish that he has suffered an injury-in-fact that is: (1) concrete, particularized, and actual or imminent; (2) fairly traceable to the defendant's conduct; and (3) redressable by a favorable court decision. *Whalen v. Michael Stores Inc.*, 153 F. Supp. 3d 577, 580 (E.D.N.Y. 2015), *aff'd*, 689 F. App'x 89 (2d Cir. 2017).

A motion challenging subject matter jurisdiction may be facial, which requires the court to determine whether the pleading alleges facts that affirmatively and plausibly suggest that a plaintiff has standing to sue. Alternatively, the motion may be fact-based, such that a court may refer to evidence outside the pleadings. *See Kraus v. Snow Teeth Whitening LLC*, 2022 WL 4642170, at

*5 (E.D.N.Y. Sept. 15, 2022), *report and recommendation adopted*, 2022 WL 4662819 (E.D.N.Y. Sept. 30, 2022). In either case, a plaintiff must establish subject matter jurisdiction affirmatively. *See Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd,* 561 U.S. 247 (2010). Therefore, while a complaint's factual allegations are accepted as true, a court should not draw argumentative inferences in the plaintiff's favor. *Id.*

**B.    Plaintiffs Do Not Plausibly Allege a Cognizable Injury (Facial Challenge to Standing)**

On its face, the Complaint fails to plausibly allege that either Plaintiff was injured. While a plaintiff's allegations of injury "need not be crafted with precise detail," a plaintiff still must allege facts "that affirmatively and plausibly suggest that [he] has standing to sue.'" *Friedman v. Cavalry Portfolio Servs., LLC*, 2023 WL 3708996, at *2 (E.D.N.Y. May 30, 2023) (citations omitted). *See also Brady v. Basic Rsch., L.L.C.*, 101 F. Supp. 3d 217, 227 (E.D.N.Y. 2015) (the "essence" of Article III's case or controversy requirement is "the presence of 'injury in fact' suffered by the plaintiff as a result of the defendant's actions") (citation omitted).

Plaintiffs do not plead *any* injury that *they* purportedly suffered. The Complaint's only *factual* allegations relating to potential injury are in paragraph 17, where Plaintiffs speculate that "Ticketholders" may have been inconvenienced by a late night:

> Ticketholders leaving the Venue after 1:00 a.m. were confronted with limited public transportation, limited ride-sharing, and/or increased public and private transportation costs at that late hour. In addition, many ticketholders who attended concerts on a weeknight had to get up early to go to work and/or take care of their family responsibilities the next day.

But fatally, Plaintiffs do not allege that *they* suffered any such "injury." Neither Plaintiff alleges that he experienced difficulty getting home or increased transportation costs. Nor does either Plaintiff allege that he was prevented from engaging in work or other planned activities the next

day.[2] Plaintiffs cannot establish injury-in-fact by alleging that *other putative class members* were injured by Defendants' conduct. *Whalen*, 153 F. Supp. 3d at 580 ("In the class action context, plaintiffs 'must allege and show that they *personally* have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (emphasis in original) (citation omitted).

Moreover, Plaintiffs do not plausibly allege that any purported "injury" is "fairly traceable" to any wrongful actions by Defendants. Plaintiffs do not allege that they decided to buy tickets for the concert *because* they saw and relied on an advertisement stating that Madonna would take the stage at 8:30 p.m. or leave by 10:30 p.m. While Plaintiffs claim they relied on the "8:30 p.m." event time printed on their tickets, they do not explain how they could have relied (never mind reasonably) on something printed on a ticket they received *after* making their purchase. This is another independent basis to dismiss the Complaint for lack of Article III standing. *See Brady*, 101 F. Supp. 3d at 229 (dismissing claims under 12(b)(1) for lack of standing where purchaser of "fat-burning" product could not "plausibly allege an injury traceable to" a spokesperson for the product because she bought the product before the representations in question had been made and therefore could not have relied on them in making her purchase); *Kraus*, 2022 WL 4642170, at *6 ("conclusory" assertions that plaintiff relied on representations are "inadequate to demonstrate reliance sufficient to confer standing for Article III purposes").

### C. Plaintiffs Cannot Plausibly Allege a Cognizable Injury (Factual Challenge to Standing)

Beyond the Complaint's facial failure to allege cognizable injury, facts outside the Complaint confirm that Mr. Hadden cannot do so. As discussed, Mr. Hadden attended Madonna's

---

[2] According to Mr. Hadden's Facebook page, he is retired.

December 13 concert and raved about it the next day in a Facebook post, stating that Madonna's show was "Incredible, as always!" *See* Warshafsky Declaration, Ex. 1. According to Mr. Hadden's post and his subsequent CNN interview, he has "been to every Madonna tour since 1985" (*id.*, Ex. 1 & 2), so he knows that Madonna "consistent[ly]" takes the stage later than the event time printed on the tickets (*id.*, Ex. 2). According to Mr. Hadden, Madonna has done so during prior tours and "every night on the [Celebration] tour," which began on October 14, 2023 in Europe. *Id.* Thus, Mr. Hadden's admissions confirm that he knew *before* buying tickets for the show that Madonna would not take the stage at 8:30 p.m. *See also* Compl. ¶ 70. He cannot allege he was deceived.

Mr. Hadden's press interviews at best suggest he may be irritated that one of his favorite acts takes the stage later than he would prefer. But that does not confer Article III standing for a federal lawsuit. *See, e.g.*, *Ford v. Reynolds*, 326 F. Supp. 2d 392, 401 (E.D.N.Y. 2004), *aff'd*, 167 F. App'x 248 (2d Cir. 2006) (event's "delay of only a few hours was not a sufficient injury to invoke the protections of Article III of the Constitution"); *Friedman*, 2023 WL 3708996, at *2-3 ("Plaintiffs' allegation that they 'suffered emotional harm due to Defendant's improper acts,' is '[a] perfunctory allegation of emotional distress . . . insufficient to plausibly allege constitutional standing'") (citation omitted).

Defendants do not believe that Mr. Fellows can plausibly allege injury either. Based on Defendants' investigation, it appears that he lives near the Barclays Center, so he cannot claim that he was "injured" as a result of increased transportation costs (or otherwise). If Mr. Fellows contends that he could allege an injury in an amended pleading, Defendants request limited jurisdictional discovery—namely, Mr. Fellows' deposition—on this subject before renewing their Rule 12(b)(1) motion. *See, e.g.*, *Cantinieri v. Verisk Analytics, Inc.*, 2023 WL 2734682 (E.D.N.Y

Mar. 31, 2023) (ordering limited discovery to determine whether named plaintiff in a putative class action had Article III standing to sue).[3]

## II. THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6)

### A. Legal Standard for Motion to Dismiss for Failure to State a Claim

To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Where a court is unable to infer more than the possibility of misconduct based on the pleaded facts, the complaint should be dismissed. *Id*. at 678-79. Further, while a court must accept as true well-pleaded factual allegations, "[a]llegations are not well pleaded if they are 'made indefinite or erroneous by other allegations in the same complaint.'" *Seeger v. Ross & Assocs.*, 2019 WL 5695944, at *1 (E.D.N.Y. Aug. 6, 2019) (citation omitted). Conclusory statements are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 681. Under these established principles, the Complaint should be dismissed with prejudice.

### B. All of Plaintiffs' Claims Fail Because They Do Not and Cannot Plausibly Allege that Defendants Misrepresented When Madonna Would Take or Leave the Stage

Each cause of action in the Complaint turns on Plaintiffs' allegation that Defendants misrepresented when Madonna's performances at the Barclays Center would begin and end, resulting in concertgoers experiencing a later night out than they may have planned. But the only alleged representation that the Complaint identifies is the 8:30 p.m. event time printed on the face

---

[3] Defendants do not see how Mr. Hadden could maintain that he suffered any injury given his admitted pre-purchase knowledge that Madonna would not take the stage at 8:30 p.m. and his self-professed enjoyment of the show. But if he does, Defendants request his deposition too.

of the tickets. And a reasonable concertgoer would not assume that the headline act would take the stage at the ticketed event time, let alone that the show would end by 10:30 p.m.

"It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (affirming dismissal of GBL §§ 349 and 350 claims under New York law); *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (affirming dismissal of New York GBL §§ 349 and 350 claims); *see also Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995) (standard was adopted to prevent "tidal wave of litigation against businesses that was not intended by the Legislature" under GBL § 349).

In making this determination, "context is crucial." *Chen*, 954 F.3d at 501 (quoting *Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200 (2d Cir. 2019)). For example, in *Chen*, the Second Circuit affirmed a complaint's dismissal because reasonable consumers who are buying a $2 or $4 "grab-and-go" sandwich or wrap from Dunkin' Donuts would not expect to receive an "unadulterated piece of meat." *Id.* Courts routinely dismiss complaints that allege a consumer is "deceived" when it would require the consumer to ignore their life experiences or common sense. *See, e.g.*, *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 191 (E.D.N.Y. 2018) (dismissing misrepresentation claims that candy packaging was misleadingly underfilled because "consumers have come to expect at least some slack-fill"); *Leboeuf v. Edgewell Pers. Care Co.*, 2023 WL 5432265, at *13 (N.D.N.Y. Aug. 23, 2023) (a reasonable consumer would not believe that a hand sanitizer advertised as 99% effective would kill "undiscovered" germs because, "[h]aving lived through almost two years of a global pandemic, a reasonable consumer would be expected to know what hand sanitizer does and does not do") (citation omitted).

Plaintiffs plead no facts to explain why they contend a reasonable consumer would interpret "8:30 p.m." on a Madonna concert ticket to mean that Madonna herself would take the stage then, never mind that she would complete her show by 10:30 p.m. Reasonable consumers and concertgoers know that headliners rarely, if ever, take the stage at the ticketed event time. It is common knowledge that concerts—and particularly major arena concerts by superstars like Madonna—have one or more opening acts, that transitions from one act to another can require set changes, and that a concert's duration depends on various other factors such as the set list chosen by the artist. For all these reasons, Plaintiffs cannot plausibly allege that it is reasonable for a consumer to interpret an "8:30 p.m." event time to mean what they claim.

Indeed, Plaintiffs acknowledge that they were not misled because it is well-known that Madonna does not take the stage at the ticketed event time; that she did not do so for prior concerts on the Celebration Tour; and that they knew or should have known Madonna would not take the stage until several hours after the event time. Compl. ¶¶ 16, 70. While it would not be reasonable under any circumstances for a consumer to think that the headliner of a major arena concert will take the stage at the ticketed event time, it is especially unreasonable in the context of Madonna's alleged "long history" of "late" starts that her fans, including Plaintiffs, know about.

Plaintiffs' allegation that ticketholders expected Madonna to take the stage at 8:30 p.m. is also unreasonable given that Ticketmaster informed purchasers, and purchasers agreed, that "[e]vent date *and time* are subject to change" and that refunds are not guaranteed if an event is moved or rescheduled. Warshafsky Declaration, Ex. 3 §§ 10, 17 (emphasis added).[4] No reasonable

---

[4] The Ticketmaster purchase policy (Ex. 3) and terms of use (Ex. 4) are subject to judicial notice. *See Force v. Facebook, Inc.*, 934 F.3d 53, 59 n.5 (2d Cir. 2019) (taking judicial notice of website terms of use); *Thorne v. Square, Inc.*, 2022 U.S. Dist. LEXIS 31810, at *3 (E.D.N.Y. Feb. 23, 2022) (same). They are also incorporated by reference in the Complaint, which alleges breach of contract.

consumer would think the event was guaranteed to begin at 8:30 p.m., let alone that Madonna would take the stage then, in light of this disclosure. *See Fink*, 714 F.3d at 742 (holding that "the presence of a disclaimer or similar clarifying language may defeat a claim of deception"); *Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395, 406 (S.D.N.Y. 2012) ("[T]here was no misrepresentation or omission because the defendants accurately represented the billing practices in a Terms of Use agreement that the plaintiff indicated she read and accepted").

Even if Plaintiffs could plausibly allege that they reasonably relied on the "8:30 p.m." time on the ticket to believe that Madonna would take the stage then—and they cannot—their claims would still fail as a matter of law. Plaintiffs do not allege that Madonna taking the stage after 8:30 p.m. is what "injured" concertgoers. Nor could they. *See Ford*, 326 F. Supp. 2d at 401 (holding that an event's start time being delayed from 9 a.m. to 11:30 a.m. "was not a sufficient injury" for a federal lawsuit). Rather, Plaintiffs claim that concertgoers were inconvenienced or injured because the concert did not *end* until around 1 a.m. *See* Compl. ¶ 17. But Plaintiffs identify no statements or representations that Defendants made about when the concert would end. While Plaintiffs assert that Defendants represented "that Madonna's performance would run two hours" (*id.* ¶ 39), the Complaint identifies no such statements on the tickets or in any advertising for the concerts. That is because Defendants made no such statements. And in the absence of such statements, a concertgoer would not reasonably assume that the event would run for a particular duration or end by some specific time, including because, as discussed, concertgoers know there will be opening acts, set changes, and variation in set lists. Thus, Plaintiffs cannot plausibly allege that a concertgoer would reasonably rely on the "8:30 p.m." time on their ticket to believe that the concert would end by 10:30 p.m.

Each of Plaintiffs' purported causes of action fails as a matter of law for these reasons. Their claims under GBL §§ 349 and 350, and for promissory estoppel and negligent misrepresentation, fail because Plaintiffs cannot plausibly allege that reasonable consumers were deceived by the ticketed event time. *Fink*, 714 F.3d at 741 (affirming dismissal of GBL §§ 349 and 350 claims because "a reasonable consumer acting reasonably under the circumstances" would not be misled); *Lin v. Canada Goose US, Inc.*, 640 F. Supp. 3d 349, 361 (S.D.N.Y. 2022) (negligent misrepresentation claim requires "reasonable reliance on the information") (citations omitted); *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 598 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x 586 (2d Cir. 2019) (promissory estoppel requires "reasonable reliance on the promise by a party") (citation omitted).

Plaintiffs' breach of contract claim fails because Defendants never promised that Madonna would take the stage by 8:30 p.m. or end her show by 10:30 p.m. *See Ortho-Clinical Diagnostics Berm. Co. v. FCM, LLC*, 739 F. App'x 664, 667 (2d Cir. 2018) (affirming dismissal of breach of contract claim because plaintiff's mere expectation that defendant would provide a certain deliverable was "not sufficient to impose on [defendant] a contractual obligation that lacks support in the parties' contract itself").[5]

The unjust enrichment claim fails for the same reason as the other claims: Plaintiffs cannot plausibly allege any fraud or breach that would render Defendants' enrichment "unjust." *Axon v. Fla.'s Nat. Growers, Inc.*, 813 F. App'x 701, 706 (2d Cir. 2020). Accordingly, the entire Complaint should be dismissed with prejudice.

---

[5] Plaintiffs do not and cannot allege that the event failed to begin at or near the ticketed time. Each of Madonna's December 2023 concerts at the Barclays Center had an opening act that took the stage at or shortly after the ticketed time.

**C.     All of Plaintiffs' Claims Fail Because They Do Not and Cannot Plausibly Allege Injury**

Each of Plaintiffs' causes of actions requires them to plausibly allege injury that they suffered as a result of Defendants' alleged wrongful conduct. For the reasons discussed above, Plaintiffs fail to do so. Thus, on top of lacking Article III standing to sue in the first place, Plaintiffs also fail to state any claim for relief for this additional reason.

**D.     Plaintiffs' Claims Also Fail for Other Independent Reasons**

As explained above, the entire Complaint should be dismissed with prejudice because Plaintiffs do not and cannot plausibly allege either (1) that Defendants promised Madonna would take the stage by 8:30 p.m. or conclude her show by 10:30 p.m., or (2) that Plaintiffs or any other concertgoers suffered injury as a result of such alleged misrepresentations. Beyond these two independent bases for dismissal, there are even more reasons that each of Plaintiffs' claims fails as a matter of law.

### 1.     *The Complaint is An Improper Shotgun Pleading*

"[I]t is well-established . . . that plaintiffs cannot simply lump defendants together for pleading purposes, and that Rule 8(a) is violated where a plaintiff, by engaging in group pleading, fails to give each defendant fair notice of the claims against it." *Romualdo v. Guru Krupa 104 Corp.*, 2023 WL 6167614, at *8 (E.D.N.Y. Sept. 1, 2023) (quoting *Nesbeth v. N.Y.C. Mgmt. LLC*, 2019 WL 110953, at *3 (S.D.N.Y. Jan. 4, 2019)). Plaintiffs are suing four defendants: Madonna, two Live Nation entities, and the Barclays Center. Yet the Complaint lumps these parties together, claiming that "Defendants" engaged in allegedly unlawful conduct without distinguishing among the defendants or alleging what each did to make them liable to the putative class. *See generally* Compl. While the Complaint alleges that some putative class members bought their concert tickets—which as discussed below are not actionable anyway—from Ticketmaster (which is

affiliated with Live Nation) or from the Barclays Center, it does not allege any ticketholders bought their tickets from Madonna herself or otherwise explain why she is being sued individually. This violates Fed R. Civ. P. 8(a). *See, e.g.*, *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (affirming dismissal of complaint that "lump[ed] all the defendants together in each claim and provid[ed] no factual basis to distinguish their conduct").

> 2. *Plaintiffs' Fraud-Based Claims (Counts 1, 2, 4, 5) Also Fail Because Plaintiffs Do Not Allege Any Representations That They Saw and Relied On Prior to Purchasing Their Tickets*

Plaintiffs purport to assert claims for false advertising (pursuant to GBL §§ 349 and 350), negligent misrepresentation, and promissory estoppel. But the Complaint lacks any well-pled factual allegations that Plaintiffs saw and relied on any misrepresentations about the concert's start time or end time *prior* to purchasing their concert tickets.

Plaintiffs cannot state claims under GBL §§ 349 or 350 based on allegedly misleading statements that they viewed *after* their purchase because they necessarily could not have been injured "as a result of" the alleged misrepresentation. Plaintiffs allege they relied on the event time printed on the face of the concert tickets they bought. Compl. ¶ 15. But they do not allege that they saw the face of the tickets *before* buying them—nor could they truthfully do so if they bought their tickets from Ticketmaster, a ticket reseller, or the Barclays Center box office. Plaintiffs' GBL §§ 349 and 350 claims fail absent such allegations. *See Lin*, 640 F. Supp. 3d at 360 (dismissing GBL § 349 claim where plaintiff did not allege that she saw the misrepresentations by defendant prior to her purchase and therefore did not make the purchase "as a result of" the misrepresentations); *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 240 (S.D.N.Y. 2020) (dismissing GBL § 349 claim where "[p]laintiffs allege that they checked Defendant's website, but . . . d[id] not allege that they viewed [the representation] prior to purchasing [the product]").

The same goes for Plaintiffs' negligent misrepresentation and promissory estoppel claims, both of which require Plaintiffs to allege detrimental reliance on a defendant's representation. *See Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012) (under New York law, negligent misrepresentation requires allegation that defendant made a false representation and "the plaintiff reasonably relied on it to his or her detriment") (citation omitted); *Herrick*, 306 F. Supp. 3d at 598 (under New York law, promissory estoppel requires "reasonable reliance on the promise by a party" and "injury caused by the reliance") (citation omitted).

Other than the concert ticket itself, Plaintiffs do not identify any allegedly false advertising regarding the concert that they purportedly saw and relied on in deciding to purchase their tickets. Plaintiffs vaguely assert that concertgoers relied on unspecified "advertisements" that the concert would start at 8:30 p.m. (Compl. ¶¶ 17, 19) and unspecified "representations" that Madonna's performance would run two hours (*id.* ¶ 39). But the Complaint does not say where those purported statements were made or even allege that Plaintiffs saw those purported representations. Such conclusory assertions are inadequate to survive dismissal. *See Lin*, 640 F. Supp. 3d at 360 ("[G]eneral allegations that a plaintiff was misled are too conclusory to support a NY GBL § 349 claim. Without allegations that Plaintiff actually saw the representations at issue, the NY GBL § 349 fails."); *Tyman v. Pfizer, Inc.*, 2017 WL 6988936, at *23 (S.D.N.Y. Dec. 27, 2017), *report and recommendation adopted*, 2018 WL 481890 (S.D.N.Y. Jan. 18, 2018) (dismissing GBL and negligent misrepresentation claims to the extent premised on television commercials or the product's website because plaintiffs "do not identify any particular representations made to them" or that "that they relied on information conveyed via television or internet in making their purchases" and it is "not even clear from their pleading whether they 'viewed' the non-label advertising before or after they made their purchases, much less which allegedly false claims or

representations they saw, read, or heard through those channels"); *In re KIND LLC "Healthy & All Nat." Litig.*, 209 F. Supp. 3d 689, 697 (S.D.N.Y. 2016) (dismissing GBL §§ 349 and 350 and negligent misrepresentation claims because "no plaintiff alleges that they read and relied on the 'non-GMO' labeling statement prior to purchasing the products"); *Herrick*, 306 F. Supp. 3d at 598 (promissory estoppel requires "a promise that is sufficiently clear and unambiguous") (citation omitted).

3. *Plaintiffs' Breach of Contract Claim (Count 3) Fails Because They Do Not Allege They Bought Their Tickets From Any Defendants*

Plaintiffs' breach of contract claim also fails because they fail to plausibly allege the existence of a contract with any Defendant. Plaintiffs assert that "Defendants offered a ticket for the Concerts" and Plaintiffs "accepted by virtue of their purchase . . . ." Compl. ¶ 56. But they do not allege that they bought concert tickets *from any Defendant*; indeed, they do not allege from whom they purchased at all. This appears to be an intentional effort to avoid admitting that they agreed to the governing terms of use for ticket purchases made from Ticketmaster and certain resellers, which, as discussed below in Section III, prohibit Plaintiffs from pursuing this litigation. But no matter why Plaintiffs failed to plead where they bought their tickets from, they cannot plausibly allege that any Defendants breached a contract without pleading they entered into a contract with such Defendants. The Complaint lacks such allegations, providing a further reason to dismiss the breach of contract claim.

4. *Plaintiffs' Negligent Misrepresentation Claim (Count 5) Also Fails Because Plaintiffs Do Not Allege Anything More Than a Common Arms-Length Commercial Transaction*

Plaintiffs' negligent misrepresentation claim fails for another independent reason. Under New York law, a plaintiff bringing a claim for negligent misrepresentation must allege, *inter alia*, that "the defendant had a duty, as a result of a special relationship, to give correct information."

*Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832, at *8 (S.D.N.Y. Oct. 26, 2016) (citation omitted). Plaintiffs do not even attempt to allege a "special relationship" that would give rise to a duty, much less any facts that would support such a relationship, thus requiring dismissal of their claim. *See Lin*, 640 F. Supp. 3d at 360 ("Because the [complaint] contains no allegations suggesting such a relationship, the negligent misrepresentation [claim] is dismissed.").

Courts routinely recognize that a common arms-length commercial transaction, such as the purchase of a concert ticket alleged here, does not give rise to a negligent representation claim. *Izquierdo*, 2016 WL 6459832, at *9 (dismissing negligent misrepresentation claim related to purchase of candy with allegedly deceptive packaging and explaining that "[n]othing in the complaint suggests that the transaction differs in any way from the numerous cases in this District and Circuit in which courts have held that a basic commercial transaction does not give rise to a special relationship"); *Warren v. Whole Foods Mkt. Grp., Inc.*, 574 F. Supp. 3d 102, 118 (E.D.N.Y. 2021) (plaintiffs "only plead that Whole Foods sold a common commercial product—oatmeal— via an arms-length transaction. This is not enough to establish a special relationship."). *See also Tyman*, 2017 WL 6988936, at *15 ("New York state and federal courts have therefore 'consistently held' that 'advertisements directed at consumers and intended to induce reliance' are 'not sufficient' to establish a 'special relationship.'") (citation omitted).

5.      *Plaintiffs' Unjust Enrichment Claim (Count 6) Also Fails for Other Reasons*

Plaintiffs do not allege that Madonna failed to perform at the concert, that her performance was anything but "incredible," that they left the concert early, or that they missed any part of the concert. Plaintiffs thus received the benefit of their bargain and cannot claim that Defendants were "unjustly" enriched.

At any rate, Plaintiffs' unjust enrichment claim must be dismissed as duplicative. "[A]n unjust enrichment claim will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *Skylar v Energizer Brands LLC*, 2022 WL 4539573, at *4 (E.D.N.Y. Sept. 28, 2022) (quoting *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 474 (S.D.N.Y. 2020)). "[E]ven pleaded in the alternative, claims for unjust enrichment will not survive" if duplicative. *Id.* (quoting *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017). Plaintiffs' unjust enrichment claim is duplicative of the five causes of action that precede it. The claim incorporates the identical factual allegations as those claims (Compl. ¶ 72) and seeks damages based on the same theory of liability (*id.* ¶ 73). Accordingly, the claim should be dismissed as duplicative. *Skylar*, 2022 WL 4539573, at *4 (dismissing unjust enrichment claim as duplicative of GBL §§ 349 and 350 claims); *Warren*, 574 F. Supp. 3d 102 (dismissing unjust enrichment claim as duplicative).

## III. ALTERNATIVELY, THE COURT SHOULD STRIKE THE COMPLAINT'S CLASS ALLEGATIONS

### a. Legal Standard for Motion to Strike Class Allegations

To proceed as a purported class action, Plaintiffs must meet the *Iqbal* and *Twombly* plausibility standard as to Rule 23's prerequisites of numerosity, commonality, typicality, and adequacy of representation, as well as plausibly allege "that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Davis v. Navient Corp.,* 2018 WL 1603871, at *5 (W.D.N.Y. Mar. 12, 2018) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997), *report and recommendation adopted,* 2019 WL 360173 (W.D.N.Y. 2019)). *See also Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (to maintain a class action, plaintiffs "must affirmatively demonstrate . . . compliance with Rule 23") (citation omitted). "The interplay of Rules 12(f), 23(c)(1)(A), and 23(d)(1)(D) empowers the Court to dismiss or strike class allegations at the pleading stage." *Davis*, 2018 WL

1603871, at *4 (quoting *Murdock-Alexander v. Tempsnow Emp.*, 2016 WL 6833961, at *3 (N.D. Ill. Nov. 21, 2016)).

A motion to strike pursuant to Rule 12(f) may be granted where "it is clear from the pleadings that the certification requirements cannot be met." *Borgese v. Baby Brezza Enters. LLC*, 2021 WL 634722, at *4 (S.D.N.Y. Feb. 18, 2021). *See also Camacho v. City of New York*, 2020 WL 4014902, at * 3 (S.D.N.Y. July 16, 2020) (striking class allegations before a motion for class certification was filed because it was "already clear" that the defects could not be cured). While "efforts to strike class allegations at the pleadings stage are often denied as premature," *Davis*, 2018 WL 1603871, at *5 (quoting *Edwards v. Oportun, Inc.,* 193 F. Supp. 3d 1096, 1100 (N.D. Cal. 2016)), the Supreme Court has observed that "sometimes the issues are plain enough from the pleadings to determine whether" class treatment is appropriate. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). That is the case here.

**b. The Complaint's Class Allegations Should be Stricken Because the Proposed Class Could Never be Certified**

Plaintiffs seek to certify a class under Rule 23(a) and (b)(3) on behalf of "[a]ll individuals throughout the United States" who purchased a ticket to a Celebration Tour concert at the Barclay Center from (i) Ticketmaster, (ii) ticket resellers, or (iii) the venue's box office. Compl. ¶ 20(1)-(3). Ticketholders who bought their concert tickets from Ticketmaster agreed to and are bound by Ticketmaster's terms of use, which provide for informal dispute resolution and mandatory arbitration of all claims relating in any way to their tickets, and which prohibit class litigation. Warshafsky Declaration, Ex. 4 § 17. Consumers who bought their tickets from certain other resellers also agreed to the Ticketmaster terms of use. As a result, most members of the putative

class agreed *not* to litigate disputes against Defendants relating to the concerts. For this reason alone, the proposed class could never be certified.[6]

Moreover, to represent the purported class, Plaintiffs would need to plausibly allege, and ultimately show, that their claims are "typical" of the class members' claims. They fail to do so. The Complaint does not say whether Plaintiffs bought their tickets directly from Ticketmaster, from a reseller (and if so which one), or from the Barclays Center. Without such factual allegations, the Complaint does not plausibly allege that Plaintiffs are typical of the putative class members who bought tickets from those sources.[7]

Nor could Plaintiffs plausibly allege typicality in an amended complaint. If on the one hand, Plaintiffs bought their tickets from Ticketmaster or another source that requires disputes to be resolved informally and/or through arbitration on an individual basis, then they could not sue Defendants at all, much less on behalf of a putative class of consumers. If on the other hand, Plaintiffs bought their tickets from a source that does *not* require disputes to be arbitrated, then they are not typical of the vast majority of putative class members who *did* agree to such terms of

---

[6]   To the extent that any class is ever certified in this case, Defendants reserve the right to require informal dispute resolution for and/or to move to compel arbitration of all absent class members' purported claims.

[7]   Defendants' counsel requested that Plaintiffs' counsel provide information that would allow Defendants to determine whether Messrs. Hadden and Fellows are bound by Ticketmaster's terms of use, including the requirements for informal dispute resolution (which Plaintiffs never attempted) and arbitration therein. Plaintiffs' counsel would not provide that information. Defendants reserve the right to move to dismiss because Plaintiffs failed to engage in informal dispute resolution and/or to move to compel arbitration against Plaintiffs should discovery reveal they agreed to the Ticketmaster terms of use or other terms of use that require arbitration. If the Court orders jurisdictional discovery in connection with the issue of Plaintiffs' Article III standing (*see supra* pp. 8-9), Defendants would explore this issue as part of that discovery.

use. Either way, Plaintiffs cannot be typical representatives of the class they seek to represent. The Court should therefore strike the Complaint's class allegations.[8]

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Complaint be dismissed with prejudice.

Dated: April 3, 2024

*/s/ Sandra A. Crawshaw-Sparks*
Sandra A. Crawshaw-Sparks
David A. Munkittrick
Jeffrey H. Warshafsky
Q. Jennifer Yang
PROSKAUER ROSE LLP
11 Times Square
New York, New York 10036
Telephone: 212.969.3915
scrawshaw@proskauer.com
dmunkittrick@proskauer.com
jwarshafsky@proskauer.com
jyang@proskauer.com

*Attorneys for Defendants*

---

[8]     A class could never be certified in this case for a host of other reasons, including the class representatives' inadequacy and the need for individualized inquiries regarding, among other things, (i) what advertisements or representations each consumer saw and relied on, (ii) what terms of use or other contractual language each consumer agreed to, (iii) when each consumer wanted or expected Madonna to take the stage and end her show, (iv) where each consumer lives relative to the Barclays Center and their means of transportation after the concert, (v) each consumer's schedule and personal or work commitments; and (vi) the extent to which each consumer suffered any injury. Defendants preserve all of these arguments, and all others relating to class certification, and will renew them following discovery if this case is not dismissed at this stage.